IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**DEBORAH ANN SHAR**, )
)
    Plaintiff, )
)
v. ) 2:11cv377
) **Electronic Filing**
**MICHAEL J. ASTRUE**, )
**COMMISSIONER OF SOCIAL** )
**SECURITY**, )
)
    Defendant. )

**MEMORANDUM OPINION**

May 21, 2012

**I.    INTRODUCTION**

Plaintiff Deborah Ann Shar ("Shar") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The parties have filed cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been developed at the administrative level. For the reasons that follow, the motion for summary judgment filed by the Commissioner will be denied, and the motion for summary judgment filed by Shar will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's administrative decision, and a remand for further proceedings. The decision of the Commissioner will be vacated, and the case will be remanded to him for further consideration of Shar's applications for DIB and SSI benefits.

1

## II. PROCEDURAL HISTORY

Shar protectively applied for DIB and SSI benefits on February 7, 2008, alleging that she had become "disabled" on December 31, 2005. R. 67, 72, 88. The Pennsylvania Bureau of Disability Determination denied the applications on July 23, 2008. R. 39, 44. Shar responded on August 25, 2008, by filing a timely request for an administrative hearing. R. 50-51. On January 28, 2010, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge ("ALJ") David J. Kozma. R. 27. Shar, who was represented by counsel, appeared and testified at the hearing. R. 29-34. Samuel E. Edelmann ("Edelmann"), an impartial vocational expert, also testified at the hearing. R. 33-34. In a decision dated February 19, 2010, the ALJ determined that Shar was not "disabled" within the meaning of the Act. R. 7-18.

On February 26, 2010, Shar sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. 6, 116-117. The Appeals Council denied the request for review on February 11, 2011, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1. Shar commenced this action on March 23, 2011, seeking judicial review of the Commissioner's decision. ECF Nos. 1-3. Shar and the Commissioner filed motions for summary judgment on October 14, 2011, and November 17, 2011, respectively. ECF Nos. 10 & 12. These motions are the subject of this memorandum opinion.

## III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision

is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

4

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

## IV. THE ALJ'S DECISION

In his decision, the ALJ determined that Shar had not engaged in substantial gainful activity subsequent to her alleged onset date. R. 12. Shar was found to be suffering from degenerative disc disease, a right patellar dislocation, emphysema, a major depressive disorder, a bipolar disorder, and an anxiety disorder. R. 12. These impairments were deemed to be "severe" under the Commissioner's regulations. R. 12; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Shar's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 12-14.

5

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ determined that Shar had the "residual functional capacity"[1] to perform the full range of "unskilled"[2] work at the "medium"[3] level of exertion. R. 14. Shar had "past relevant work"[4] experience as an activity coordinator for a nursing home. R. 32-33. Edelmann classified Shar's previous position as an "unskilled" job falling between the "light"[5] and "medium" levels of exertion. R. 33. Because Shar was found to be capable of performing the full range of "unskilled," "medium" work, the ALJ concluded that she could return to her past relevant work.

## V. VOCATIONAL FACTORS

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).
[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).
[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[4] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.
[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

Shar was born on June 26, 1953, making her fifty-two years old on her alleged onset date and fifty-six years old on the date of the ALJ's decision. R. 33, 67, 72. As of her alleged onset date, she was classified as a "person closely approaching advanced age" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(d), 416.963(d). Shar became a "person of advanced age" on June 28, 2008, when she reached the age of fifty-five. 20 C.F.R. §§ 404.1563(e), 416.963(e). She had a high school education and an ability to communicate in English. R. 91, 96; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5).

## VI. MEDICAL EVIDENCE

Shar sought treatment from Dr. David A. Harinstein on May 17, 2007. R. 122. She complained of insomnia, depression, joint pain and a dental abscess. R. 122. Dr. Harinstein provided her with a prescription for Vicodin and instructed her to seek treatment for her dental problems. R. 122.

On June 21, 2007, Shar visited Dr. George S. Kappakas for an evaluation of her left foot. R. 118, 164. An x-ray revealed that Shar had fractured the fifth toe on that foot. R. 118, 164. She was told to apply "buddy taping" and return for another evaluation one month later. R. 118, 164. As of July 16, 2007, Shar was still experiencing pain in her left foot. R. 121.

Dr. Harinstein examined Shar on August 9, 2007. R. 120. Shar continued to complain of insomnia. R. 120. She stated that Celexa had given her diarrhea, and that she could not tolerate it. R. 120. It was noted that other medications had caused Shar to suffer side effects in the past. R. 120. She was advised to seek treatment for her mental impairments. R. 120.

Shar visited Dr. Harinstein again on February 25, 2008. R. 119. She stated that she had recently experienced pain in her right knee. R. 119. The problem with her knee was apparently rooted in a dislocation that she had suffered several years earlier. R. 119.

Dr. Harinstein reported on April 10, 2008, that Shar was suffering from "[s]evere anxiety with major depression." R. 185. Shar complained of tearfulness, fatigue, insomnia and an inability to eat. R. 185. This exacerbation of her symptoms evidently occurred after the termination of her Medicaid coverage, which caused her to lose access to psychotropic medications. R. 185. Dr. Harinstein observed that Shar needed those medications to control her "chronic symptoms." R. 185.

On June 4, 2008, Dr. Lanny Detore performed a consultative psychological evaluation of Shar in connection with her applications for DIB and SSI benefits. R. 123-128. Prior to the evaluation, Shar stated that she had attended three or four therapy sessions at the Mon-Yough Community Health Center between February and March of 2008, but that those treatments had been discontinued because of her loss of Medicaid coverage. R. 124. Based on the findings of his evaluation, Dr. Detore opined that Shar had "moderate" limitations in her abilities to respond appropriately to changes in a routine work setting and interact appropriately with supervisors and co-workers, and "moderate" to "marked" limitations in her abilities to interact appropriately with members of the general public and respond appropriately to work pressures in a usual work setting. R. 127. No other significant limitations were found. R. 127. Shar's prognosis was described as "excellent" for her "continued level of functioning," provided that she continued to maintain her medication regimen and seek "supportive therapy." R. 126.

Dr. Bushra P. Haider performed a consultative physical examination of Shar on June 18, 2008. R. 129-137. Dr. Haider's examination report included information pertaining to Shar's

8

knee impairment. R. 129. Shar reported that she had suffered a dislocated right knee sixteen years earlier, and that she would suffer "excruciating" pain in that knee once or twice per year for three to four days at a time. R. 129. Dr. Haider indicated that Shar could frequently lift objects weighing up to ten pounds and occasionally carry objects weighing up to three pounds. R. 134. Dr. Haider opined that, with a sit/stand option, Shar could sit for up to eight hours per day, but that she could stand or walk for only one hour or less. R. 134. Shar was deemed to be limited in her abilities to push and pull with her lower extremities. R. 134. Dr. Haider further asserted that Shar was limited to only occasional stooping and crouching. R. 135.

Dr. Edward Jonas, a non-examining psychological consultant, opined on June 20, 2008, that Shar had "moderate" limitations in her abilities to work in coordination with (or proximity to) others without being distracted, to interact appropriately with members of the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. R. 138-139. Based on his review of the documentary evidence, Dr. Jonas stated that Shar could "meet the mental demands of competitive work on a sustained basis." R. 140. Dr. Nghia Van Tran, a non-examining medical consultant, reported on July 16, 2008, that Shar was physically capable of performing an unlimited range of medium work activities. R. 156-162.

Gail Turner ("Turner"), a certified registered nurse practitioner ("CRNP"), examined Shar on September 23, 2008. R. 184. Shar reported that she had suffered a head injury during a bicycle-riding accident three weeks earlier. R. 184. She was advised to undergo a computed tomography ("CT") scan to rule out serious head injuries. R. 184. During the course of her examination, Turner noticed that a rash had started to form on Shar's abdomen. R. 184.

Shar underwent the recommended CT scan on October 13, 2008. R. 190. "[N]o acute intracranial abnormality" was found. R. 190. As of October 16, 2008, however, the rash on Shar's abdomen was still present. R. 182. Shar told Dr. Harinstein that the rash was very itchy, and that it was interfering with her ability to sleep. R. 182. Dr. Harinstein determined that Shar was suffering from a form of "eczema" with "pruritus." R. 182. Medications were prescribed the alleviate the problem. R. 182.

Dr. Michael A. Tranovich, an orthopedic surgeon, examined Shar on January 22, 2009. R. 163. Shar told Dr. Tranovich that she had experienced difficulties while "going up and down steps" and changing positions. R. 163. She stated that she sometimes needed to stand and stretch for short periods of time before starting to walk. R. 163. Dr. Tranovich's examination of Shar's right knee revealed that she had "significant luxation of the patella in the lateral direction with tenderness along the patellar retinaculum." R. 163. X-rays taken that day showed that while Shar had only "mild osteopenia" and "minimal lateral compartment disease," she also suffered from "maximal luxation of the patella with significant patellofemoral arthrosis and osteophytosis." R. 163.

On February 8, 2009, Shar slipped and fell on a patch of ice. R. 174. Although she sustained multiple contusions, no fractures were found. R. 174. An x-ray of her cervical spine yielded normal results. R. 174. Nevertheless, Shar complained of severe pain in her neck. R. 174. Diagnostic testing conducted on March 4, 2009, revealed that she had degenerative disc disease and "[m]inimal degenerative arthritis." R. 189.

Shar returned to Dr. Harinstein's office on July 10, 2009. R. 167. She described "episodes of dizziness" that she had experienced during the previous two weeks. R. 167. Shar

also stated that she had been suffering from "[g]eneralized fatigue" and "shortness of breath." R. 167. An albuterol inhaler was prescribed to control her breathing symptoms. R. 167.

Dr. Mehboob K. Chaudhry, a pulmonary specialist, examined Shar on October 23, 2009. R. 198. Shar complained of breathing difficulties, insomnia, poor vision, leg pain, foot pain, excessive urination, heartburn, arthritis and eczema. R. 198-199. Dr. Chaudhry adjusted Shar's medication regimen in order to alleviate her symptoms. R. 198.

Shar sought psychiatric treatment from Dr. Jose Alfano on November 18, 2009. R. 193-194. Dr. Alfano noted that Shar had received inpatient psychiatric treatment on three previous occasions. R. 193. These psychiatric admissions apparently resulted from failed suicide attempts prior to the relevant period of time. R. 193. Abilify was prescribed to control Shar's "mood swings." R. 193. She was assigned a Global Assessment of Functioning ("GAF") score of 50. R. 194.

## VII. DISCUSSION

Shar challenges the ALJ's findings concerning both her physical and mental impairments. She argues that the ALJ should have credited Dr. Haider's examination findings, which would have limited her to "sedentary"[6] work. ECF No. 11 at 12-15. She further contends that the ALJ's residual functional capacity assessment should have accounted for additional mental limitations. *Id.* at 6-11. Shar points out that a finding of "disabled" would have been directed by Medical-Vocational Rule 201.06 had the ALJ found her to be limited to sedentary work. *Id.* at 12; 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1, Rule 201.06.

---

[6] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

11

At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). Where the claimant's residual functional capacity is shared by a large class of other individuals, the Commissioner's burden can be satisfied by reference to general guidelines. *Heckler v. Campbell*, 461 U.S. 458, 467-470, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Allen v. Barnhart*, 417 F.3d 396, 405-408 (3d Cir. 2005). Where the claimant has a unique combination of functional limitations, the Commissioner can satisfy his burden only by establishing the existence of jobs in the national economy that are consistent with the claimant's specific capabilities and limitations. *Sykes v. Apfel*, 228 F.3d 259, 273 (3d Cir. 2000). In the latter scenario, the Commissioner's burden is usually satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

A claimant with both exertional and nonexertional limitations cannot be denied benefits solely on the basis of the Medical-Vocational Rules. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982). Shar claims that the ALJ improperly excluded the nonexertional limitations identified by Dr. Detore and denied her applications for benefits pursuant to Medical-Vocational Rule 203.14. ECF No. 11 at 6-15. She further argues that the ALJ should have credited Dr. Haider's examination findings and awarded her benefits on the basis of Rule 201.06. *Id.* at 12-13.

Shar's applications for benefits were denied at the *fourth* step of the sequential evaluation process. R. 17. A claimant who is capable of returning to his or her past relevant work is denied benefits at the fourth step of the process regardless of whether such work exists in the national

economy. *Thomas*, 540 U.S. at 25-29. The Medical-Vocational Rules relate solely to "the types and numbers of jobs that exist in the national economy." *Campbell*, 461 U.S. at 468. Since Shar's applications were denied at the fourth step, there is no way that the ALJ could have applied Rule 203.14. The process never reached the point at which the Medical-Vocational Rules would have been applicable. Furthermore, the ALJ did not make an alternative finding at the fifth step of the process. R. 17. Shar's contention that the ALJ wrongfully evaded his obligation to seek vocational expert testimony by applying Rule 203.14 is not supported by the record. ECF No. 11 at 12.

A claimant who can no longer perform the duties of a previously-held job is nevertheless deemed to be capable of returning to his or her past relevant work if he or she "retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy." *Rivera v. Barnhart*, 239 F.Supp.2d 413, 420 (D.Del. 2002). For this reason, the testimony of a vocational expert may be utilized at the fourth step of the sequential evaluation process.[7] 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). In this case, the ALJ purported to rely on Edelmann's testimony in determining that Shar could return to her past relevant work. R. 17. The portion of the hearing transcript relied upon by the ALJ reads as follows:

> ALJ: At this time can we have the vocational expert give a description of work performed?
>
> VE: Claimant's past work as a [sic] activity coordinator was unskilled work, light to medium.

---

[7] A claimant's residual functional capacity is only assessed once. *Her v. Commissioner of Social Security*, 203 F.3d 388, 391-392 (6th Cir. 1999). The *same* residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii). Therefore, the testimony elicited by a single hypothetical question may relate to both the fourth and fifth steps.

13

> ALJ: Before further questioning, you're 55?
>
> CLMT: I'm 57.
>
> ALJ: You're 57 now?
>
> CLMT: I'm 56, [sic] I'll be 57 in June.
>
> ALJ: And high school, and also the residual functional capacity the attorney's [inaudible] would that allow any working?
>
> VE: No, based on both mental and physical problems she couldn't perform that work? [sic]
>
> ALJ: And she could perform light work [inaudible]?
>
> VE: Yes.
>
> ALJ: All right [sic] counselor [sic] any questions for the VE?
>
> ATTY: No your honor.

R. 33-34. Unfortunately, the "inaudible" sections of the transcript make it difficult to understand the context of Edelmann's testimony. Given that the ALJ found Shar to be capable of performing the full range of "unskilled" work at the "medium" level of exertion, Edelmann's testimony appears to have been consistent with the ALJ's conclusion. R. at 17, 33.

Although Edelmann's testimony concerning the demands of Shar's prior position coincided with the ALJ's subsequent finding that an individual who could perform the full range of unskilled, medium work could perform the duties of that position, Shar's challenge to the weight accorded to the various medical opinions contained in the record constitutes a direct challenge to the ALJ's residual functional capacity assessment. *Rutherford*, 399 F.3d at 554, n. 8. Under the present circumstances, the ALJ's assessment must be set aside for two reasons. First of all, the ALJ's factual findings are internally inconsistent. Second, the ALJ's residual functional capacity assessment is unsupported by the evidentiary record.

14

At the second step of the sequential evaluation process, the ALJ determined that Shar suffered from six "severe" impairments. R. 12. Admittedly, the "severity" threshold applicable at the second step is relatively easy for a claimant to surmount. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004). Nonetheless, a finding of "severity" with respect to a specific impairment necessarily implies that the impairment results in "an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C; *Markle v. Barnhart*, 324 F.3d 182, 188 (3d Cir. 2003)(equating any "severe" impairment with the "additional" impairment required to satisfy the "C" criteria of Listing 12.05). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). Since *any* "severe" impairment results in some degree of functional limitation, an administrative law judge's residual functional capacity assessment must account for all impairments previously found to be "severe."[8] *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-505 (3d Cir. 2009).

Despite the presence of six "severe" impairments, the only limitations found by the ALJ were the ones incorporated within the regulations defining "unskilled" and "medium" work. R. 14. The ALJ did not include standing and walking limitations to accommodate Shar's knee injury, environmental limitations to accommodate her breathing difficulties, or additional limitations to accommodate her mental impairments. R. 12, 14. Since the ALJ found Shar's right patellar dislocation,[9] emphysema, major depressive disorder, bipolar disorder and anxiety

---

[8] Limitations resulting from a claimant's "non-severe" impairments must also be accounted for. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).
[9] Shar told Dr. Haider that her knee impairment resulted in significant pain only once or twice per year. R. 129, 132. By classifying that impairment as a "severe" impairment, however, the ALJ

15

disorder to be "severe" impairments, he was required to account for them in his residual functional capacity assessment.[10] *Diaz*, 577 F.3d at 504-505.

The ALJ accorded "little weight" to Dr. Haider's examination findings. R. 15. He apparently relied exclusively on Dr. Van Tran's consultative opinion in determining that Shar was physically capable of performing the full range of medium work. R. 16, 156-162. This reliance was problematic, since a report supplied by an examining physician is ordinarily entitled to more weight than an assessment provided by a non-examining physician. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *McPherson v. Astrue*, 605 F.Supp.2d 744, 772 (S.D.W.Va. 2008). Even if it is assumed that the ALJ permissibly credited Dr. Van Tran's opinion over that of Dr. Haider, the record contains no support for his wholesale rejection of Shar's mental limitations. As discussed earlier, Dr. Detore reported that Shar had "moderate" limitations in her abilities to respond appropriately to changes in a routine work setting and interact appropriately with supervisors and co-workers, and "moderate" to "marked" limitations in her abilities to interact appropriately with members of the general public and respond appropriately to work pressures in a usual work setting. R. 127. Dr. Jonas identified "moderate" limitations in Shar's abilities to work in coordination with (or proximity to) others without being distracted, to interact appropriately with members of the general public, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and to respond appropriately to changes in the work setting. R. 138-139. Dr. Jonas also indicated that Shar had a "moderate" degree of

---

necessarily determined that its effects were sufficiently enduring to satisfy the Act's twelve-month durational requirement. 20 C.F.R. §§ 404.1522, 416.922.

[10] The ALJ apparently considered the lifting and carrying limitations contained within the definition of "medium" work to be sufficiently restrictive to accommodate Shar's degenerative disc disease. 20 C.F.R. §§ 404.1567(c), 416.967(c).

16

limitation with respect to her maintenance of social functioning. R. 152. Dr. Harinstein's treatment notes confirm that Shar's mental impairments resulted in "very severe symptoms" when she did not have access to her medications. R. 185. It is also clear that Shar's medications frequently caused her to suffer serious side effects. R. 120-121. A limitation restricting Shar to "unskilled" work simply fails to adequately account for the limitations resulting from her mental impairments.

Although the ALJ's perfunctory residual functional capacity assessment is devoid of evidentiary support, the evidence contained in the record does not necessarily compel the conclusion that Shar was "disabled" during the relevant period of time. As the Commissioner points out, "Dr. Harinstein never opined that [Shar] had any functional limitations or was in any way unable to work because of her impairments." ECF No. 13 at 16-17. Dr. Detore stated that Shar had an "excellent" prognosis. R. 126. The documentary record suggests that Shar's mental impairments can be adequately controlled with medication. R. 185. Under these circumstances, the proper remedy is a remand for further consideration of Shar's claims rather than an immediate award of benefits. *Ambrosini v. Astrue*, 727 F.Supp.2d 414, 432 (W.D. Pa. 2010).

## VIII. CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by the Commissioner will be denied, and the motion for summary judgment filed by Shar will be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's final decision, and a remand for further proceedings. The Commissioner's decision will be vacated, and the case will be remanded to him for further consideration of Shar's applications for DIB and SSI benefits. Shar must be afforded "an opportunity to be heard" on

17

remand. *Thomas v. Commissioner of Social Security*, 625 F.3d 798, 801 (3d Cir. 2010). The Commissioner is not inevitably required to conduct a new hearing when a case is remanded for further consideration. *Thomas*, 625 F.3d at 800, n. 2. The hearing conducted before the ALJ in this case, however, was unusually brief. R. 27-35. Since Social Security disability proceedings "are inquisitorial rather than adversarial," the Commissioner has a "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000)(plurality opinion). Consequently, a new hearing in this case would be highly desirable.

By the Court:

s/ Davidid Stewart Cercone
David Stewart Cercone
United States District Judge

cc:    Lindsay Fulton Osterhout, Esquire
       Albert Schollaert
       Assistant United States Attorney

       (*Via Electronic Mail*)